CENTER FOR DISABILITY ACCESS
Mark Potter, SBN 166317
Phyl Grace, Esq., SBN 171771
Christopher Seabock, SBN 279640
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Robert Elguezabal**, | **Case No**. |
| Plaintiff, | **Complaint For Damages And Injunctive Relief For Violations Of**: American's With Disabilities Act; Unruh Civil Rights Act |
| v. | |
| **Mitla Land Company LLC,** a California Limited Liability Company; **Mitla Restaurants, Inc.,** a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Robert Elguezabal complains of Defendants Mitla Land Company LLC, a California Limited Liability Company; Mitla Restaurants, Inc., a California Corporation; and Does 1-10, ("Defendants") and alleges as follows:

**PARTIES**:

1.  Plaintiff is a California resident with physical disabilities. Plaintiff is a paraplegic who cannot walk. He uses a wheelchair for mobility.

1

Complaint

2.   Defendants are, or were at the time of the incidents, the real property owners, business operators, lessors and/or lessees for the Mitla Café ("Mitla") located at or about 602 N. Mt. Vernon Avenue, San Bernardino, California.

3.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

4.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5.   Pursuant to pendant jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

7.   The plaintiff went to Mitla in February of 2015 to eat.

Complaint

8.   Mitla is a business establishment and place of public accommodation.

9.   Parking spaces are one of the facilities, privileges and advantages offered by defendants to their customers at Mitla.

10. Unfortunately, although parking spaces are one of the facilities available to patrons of Mitla, there were no compliant parking spaces available for persons with disabilities.

11. Plaintiff alleges that there used to be accessible parking spaces in the lot for persons with disabilities. Unfortunately, the parking spaces reserved for persons with disabilities have faded or, more likely, been paved over. Because of defendants' lack of maintenance and care, the accessible parking spaces are no longer available for use by persons with disabilities.

12. Defendants have no policy or procedure in place to make sure that the accessible parking spaces remain useable in the parking lot. As such, the parking space reserved for persons with disabilities is no longer suitable for use by plaintiff.

13. Men's restrooms are one of the facilities, privileges and advantages offered by defendants to their customers at Mitla.

14. Unfortunately, the path of travel from the dining room to the restroom requires a person to navigate a step for which there is no ramp.

15. Moreover, the men's restroom doorway clear passage width was 22 inches and inaccessible to wheelchair users.

16. The restroom provides a toilet. However, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there is just one grab bar.

17. The restroom mirror is mounted on the wall so that its bottom edge is approximately 49 inches above the floor and is not effectively used by wheelchair users.

18. There are wall mounted accessories and equipment in the restroom

3

including a soap dispenser. The dispenser is mounted so that its highest operable parts are greater than 54 inches above the finished floor and inaccessible to wheelchair users.

19. The plaintiff personally encountered this problem. This inaccessible condition denied the plaintiff full and equal access and caused him difficulty and frustration.

20. Plaintiff would like to return and patronize Mitla but will be deterred from visiting until the defendants cure the violation. Plaintiff lives about four miles from Mitla, which makes its location very convenient for plaintiff. He would like to return.

21. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

22. Given the obvious and blatant violations, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2007) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

23. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because had the defendants intended any other configuration, they had the means and ability to make the

Complaint

change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

24. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

25. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the accessibility standards found at 28 C.F.R., Part 36, Appendix "D" sometimes called the "ADAAG" and referred to in this complaint as the "1991 Standards".

   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to

Complaint

1   the maximum extent feasible, the path of travel to the altered
2   area and the bathrooms, telephones, and drinking fountains
3   serving the altered area, are readily accessible to and usable by
4   individuals with disabilities. 42 U.S.C. § 12183(a)(2).

5   26. Any business that provides parking spaces must provide accessible
6   parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify
7   as a reserved handicap parking space, the space must be properly marked and
8   designated. Under the ADA, the method and color of marking are to be
9   addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, §
10  502.3.3. Under the California Building Code, to properly and effectively
11  reserve a parking space for persons with disabilities, each such space must be
12  identified with a reflectorized sign permanently posted adjacent to and
13  visible from each stall or space. CBC § 1129B.4. The sign must consist of the
14  International Symbol of Accessibility (♿) in white on a blue background. *Id.* It
15  cannot be smaller than 70 square inches and must be mounted so that there
16  is a minimum of 80 inches from the bottom of the sign to the parking space.
17  *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking
18  in the space. *Id.* An additional sign or additional language below the symbol
19  of accessibility must state, "Minimum Fine $250" to ensure that the space
20  remains available for persons with disabilities. *Id.* Another sign must be
21  posted in a conspicuous place at the entrance to the parking lot or
22  immediately adjacent to each handicap parking space, with lettering 1 inch in
23  height, that clearly and conspicuously warn that unauthorized vehicles
24  parking in the handicap parking spaces can be towed at the owner's expense.
25  *Id.* Additionally, the surface of the handicap parking stall must have a profile
26  view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id.* And the
27  surface of the access aisle must have a blue border. CBC § 1129B.3. The
28  words "NO PARKING" in letters at least a foot high must be painted on the

6

Complaint

access aisle. *Id*.

27. Here, there was no accessible parking whatsoever for persons with disabilities.

28. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an accessible route, there cannot be a stair or step. 1991 Standards § 4.3.8. Any such change in level measuring greater than ½ inch must have a ramp or lift. *Id*. 2010 Standards § 303.4.

29. Here, the unramped step in front of the restroom entrance is a violation of the ADA.

30. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

31. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

32. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

33. Here, the failure to provide two compliant grab bars is a violation.

34. If controls, dispensers, receptacles or other equipment is provided in a restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

35. Here, the failure to ensure that the wall mounted accessories met the

Complaint

height requirement is a violation of the ADA.

36. Given its location and options, Mitla is a business that the plaintiff would like to patronize on a regular and ongoing basis but he has been and will continue to be discriminated against due to the lack of accessible facilities.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiffs and against all defendants) (Cal Civ § 51-53)

37. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

38. Because the defendants violated the plaintiffs' rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

39. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiffs, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER:**

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

8

Complaint

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: March 29, 2015                    CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint